UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| DEB FULA, | ) | CIV. 12-5071-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| SAFEWAY STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Plaintiff Deb Fula filed a multi-count amended complaint against the defendant, Safeway Stores, Inc., her former employer.  (Docket 5).  Ms. Fula alleges unlawful discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 633(a)(c), ("ADEA"), and SDCL § 20-13-10, the South Dakota anti-discrimination law based on gender and age.  Id. at ¶¶ 19-26. Plaintiff also alleges a disparate impact claim based on gender and age.  Id. at ¶¶ 27-29.  Defendant denies it discriminated against Ms. Fula.  (Docket 10).  This matter is presently before the court on defendant's motion for summary judgment as to all counts.  (Docket 29).  Plaintiff resists defendant's motion in its entirety.  (Docket 35).  For the reasons stated in this order, defendant's motion for summary judgment is granted.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at 248. Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. Id. However, the moving party is entitled to judgment as a matter of law if the nonmoving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "There can be 'no genuine issue as to any material fact,' since a

2

complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). In order to withstand a motion for summary judgment, the nonmoving party "must substantiate [her] allegations with 'sufficient probative evidence [that] would permit a finding in [her] favor on more than mere speculation, conjecture, or fantasy.' " Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (citing Gregory v. Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992), cert. denied, 507 U.S. 913 (1993)). "A mere scintilla of evidence is insufficient to avoid summary judgment." Moody, 23 F.3d at 1412. The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing a genuine issue of material fact exists. Id. at 256; see also Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007) (mere allegations, unsupported by specific

facts or evidence beyond a nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*) ("The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.") (internal quotation marks and citation omitted).  The non-moving party's own conclusions, without supporting evidence, are insufficient to create a genuine issue of material fact.  Anderson, 477 U.S. at 256; Thomas, 483 F.3d at 527; Torgerson, 643 F.3d at 1042.

**UNDISPUTED MATERIAL FACTS**

The following recitation consists of the material facts undisputed by the parties.  These facts are developed from the amended complaint (Docket 5), defendant's answer (Docket 10), defendant's statement of undisputed material facts (Docket 31), plaintiff's response to defendant's statement of undisputed material facts and additional statement of undisputed material facts (Docket 36), and defendant's reply to plaintiff's additional statement of undisputed material facts (Docket 41).  Where a statement of fact is

4

admitted by the opposing party, the court will only reference the initiating document.

Safeway is a business affecting commerce as defined under 29 U.S.C. § 630(h).  Safeway employed twenty or more employees for each working day during each of twenty or more calendar weeks in the current or preceding calendar year.  As a result, Safeway is an employer within the meaning of 29 U.S.C. § 630(h).[1]  (Docket 5 at ¶ 4).  At all times pertinent to this litigation, Ms. Fula was a 58-year-old female employee of Safeway Store #1554 located at 730 Mt. View Road, Rapid City, South Dakota.  Id. at ¶¶ 6-8.

Ms. Fula began her employment as a cashier at Store #1554 on January 26, 2000.  (Docket 31 at ¶ 1).  She worked as a cashier until her termination in 2010.  Id. at ¶ 2.  Ms. Fula was terminated on or about August 4 or 5, 2010.  (Docket 5 at ¶ 9).  When Ms. Fula began at Store #1554 in 2000, she was earning a minimum wage of $5.71 per hour.  When she was terminated in 2010, she was earning $10.60 per hour.  (Docket 36 at ¶ 56).  At the time of her termination, Ms. Fula's benefits included three weeks paid vacation and full health insurance coverage.  Id. at ¶ 60.

---

[1]The court finds plaintiff's additional statement of material facts as it relates to Safeway's corporate structure is irrelevant to the issues before the court.

Safeway's Store Rules ("Store Rules") state that "pilferage, theft, misappropriation, conversion, or concealment of Company property, merchandise, or funds, regardless of value, are strictly prohibited." (Docket 31 at ¶ 4). The Store Rules restrict the use of vendor coupons ("Catalina coupons") which "are generated specifically for the use of the customer only." Id. at ¶ 5. Ms. Fula understood that if a customer's purchase generated a Catalina coupon but the customer did not want the coupon, employees were not allowed to use the coupon. Id. at ¶ 8. When her customers did not want the coupon, Ms. Fula would rip it up and throw it away. Id. The Money Handling and Register Policy of the Store Rules states "[e]mployees found to be in violation of these Money Handling and Register Policies shall be subject to appropriate discipline, up to and including termination." (Docket 31 at ¶ 9; see also Docket 37-3).

Safeway operates a program allowing customers to use their club card to receive certain sale prices and benefits. (Docket 31 at ¶ 10). Ms. Fula knew employees were not allowed to use anyone else's club card when shopping at Safeway. Id. at ¶ 11.

On July 14 and 19, 2010, while shopping at Store #1554, Ms. Fula made several purchases using Catalina coupons. Id. at ¶ 12. By reviewing the scan-bars, Safeway confirmed Ms. Fula used other customers' coupons. Id. at ¶ 16. During a subsequent investigation of Ms. Fula's use of Catalina

6

coupons, she admitted either finding the coupons in the break room, on the sales floor, or the coupons were given to her by others.  Id. at ¶ 17.

Mr. Ryland was the manager at Store #1554.  (Docket 36 at ¶ 37).  He admitted that when employees are off the clock they are treated like any other customer but are still held accountable for the Store Rules.  (Dockets 36 at ¶ 81; 41 ¶ 81).

After reviewing the results of Safeway's investigation, Doug Martinez, Safeway's Labor Contract Administrator at the Division Office in Denver, Colorado, made the decision to terminate Ms. Fula.  (Docket 31 at ¶ 20).  This decision was based on her violation of Safeway policy, specifically her use of coupons not generated by her own purchases and the use of another customer's club card.  Id.  Mr. Martinez did not know Ms. Fula's age or wage rate at the time of her discharge.  Id. at ¶¶ 21 & 31.  Ms. Fula did not know Mr. Martinez and had no reason to believe he discriminated against women or any person over 40 years of age.  Id. at ¶ 25.

During her employment at Store #1554, Ms. Fula was the subject of several disciplinary actions, was accused of making racially discriminatory and sexual comments, and was warned concerning Safeway's workplace violence policy, due to an altercation with another employee four months

7

before her termination.[2] Id. at ¶ 3.  Mr. Greene, the assistant manager of Store #1554, participated in most of Ms. Fula's employee evaluations over several years.  (Docket 36 at ¶ 137).  Mr. Greene testified Ms. Fula was "a great employee.  She was right up until the time . . . she got terminated for theft.  I thought she was a great employee."  (Dockets 36 at ¶ 139; 41 at ¶ 139).

In 2010, four other employees were terminated by Mr. Martinez for using Catalina coupons that were not generated from the employees' own purchases.  (Docket 31 at ¶ 24).  The employees terminated included a 19-year-old female and two males, ages 17 and 18.  Id.

Ms. Fula filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 6, 2011, alleging age and gender discrimination.  Id. at ¶ 26.  Ms. Fula claims her termination in August 2010 was the adverse employment action giving rise to the EEOC charge.  Id. at ¶ 28; see also Docket 36 at ¶ 28.

Ms. Fula alleges Safeway's conversion of checkout lanes into self-service lanes somehow discriminated against her.  But to her knowledge, no cashiers were terminated as a result of this transition,

---

[2]Ms. Fula objects to this statement as irrelevant and immaterial.  (Docket 36 at ¶ 3).  She also denies these allegations are true.  Id.  However, the statement  is that she was "accused" of making these comments.  Ms. Fula does admit to being cautioned regarding the workplace violence policy on two occasions.  Id.

including herself and another female cashier in her early forties.  Ms. Fula
acknowledged that the conversion would impact every cashier, irrespective
of race, disability, gender or age.  (Docket 31 at ¶ 29).  The conversion to self
checkout lanes did not discriminate against Ms. Fula.  (Docket 36 at ¶ 29).
Ms. Fula was transferred to a self checkout lane and was not terminated.
(Docket 41 at ¶ 29).  Two other female cashiers affected by the transition
were over the age of forty, were paid a higher hourly wage than Ms. Fula,
and neither of them were terminated.  (Dockets 31 at ¶ 30; 36 at ¶ 30; 41 at
¶ 30).

Ms. Fula does not recall Mr. Ryland making any comments relating to
gender or age.  (Dockets 31 at ¶ 33; 36 at ¶ 33).  After Ms. Fula's
termination, the next five new cashier hires were ages 17, 18, 23, 42, and
60, with the first hire being the 42-year-old individual.  (Dockets 36 at ¶ 77;
41 at ¶¶ 55 & 77).

**DISCUSSION**

**A.   AGE  DISCRIMINATION CLAIM**

The ADEA prohibits employers from taking adverse employment
actions against employees because of their age.  King v. United States, 553
F.3d 1156, 1160 (8th Cir. 2009).  A plaintiff may establish a claim of
intentional age discrimination through either direct or indirect evidence.  Id.
Where plaintiff presents direct evidence of discrimination, the court

9

evaluates the claim under the mixed-motives framework established in <u>Price Waterhouse v. Hopkins</u>.[3]  <u>Id.</u>  Where plaintiff presents indirect evidence of discrimination, the court evaluates the claim under the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>.[4]  <u>Id.</u>

Under the <u>McDonnell Douglas</u> framework, a plaintiff may establish a prima facie case of age discrimination by showing (1) she is over the age of forty; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) similarly-situated employees outside the class were treated more favorably.  <u>Anderson v. Durham D & M, L.L.C.</u>, 606 F.3d 513, 523 (8th Cir. 2010).  In discriminatory discharge cases, plaintiff may establish the fourth element by demonstrating she was replaced by a substantially younger individual.  <u>Id.</u>  Once plaintiff establishes a prima facie case of age discrimination, the burden of production shifts to the employer to demonstrate a legitimate, non-discriminatory reason for its employment action.  <u>King</u>, 553 F.3d at 1162.  Plaintiff then bears the burden of demonstrating the employer's stated reason was a mere pretext for discrimination.  <u>Id.</u>  Ms. Fula does not present any direct evidence of discrimination, so the court must use the <u>McDonnell Douglas</u> framework to analyze her claim.

---

[3]490 U.S. 228, 278-79 (1989).

[4]411 U.S. 792 (1973).

Ms. Fula was 58 years of age at the time of her termination and she was qualified for her cashier position, having been in that position for ten years.   Termination is an adverse employment action.  <u>Anderson</u>, 606 F.3d at 523.  For purposes of this summary judgment motion only, Safeway concedes Ms. Fula met the first three elements of a prima facie case of age discrimination.  (Docket 30 at p. 6).

The question then becomes—was Ms. Fula replaced by a substantially younger employee?  <u>Anderson</u>, 606 F.3d at 523.  The undisputed evidence is that Ms. Fula was replaced by a 42-year-old person. (Dockets 36 at ¶ 77; 41 at ¶¶ 55 & 77).  The replacement employee was within the same protected class as Ms. Fula.  <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 517 U.S. 308, 312-13 (1996) (prima facie case requires evidence adequate to create inference of discrimination, which cannot be drawn from the replacement of one worker with another worker insignificantly younger).  Ms. Fula presented no evidence she was "replaced by another person sufficiently younger to permit the inference of age discrimination." <u>McGinnis v. Union Pacific R.R.</u>, 496 F.3d 868, 876 (8th Cir. 2007) (internal quotation marks and citation omitted).

"Summary judgment is proper if a plaintiff fails to establish any element of her prima facie case."  <u>Wilking v. County of Ramsey</u>, 153 F.3d 869, 873 (8th Cir. 1998) (referencing <u>Weber v. American Express Co.</u>, 994

11

F.2d 513, 515-16 (8th Cir. 1993) ("if the plaintiff fails to establish a factual dispute on each element of the prima facie case, summary judgment is appropriate . . . .") (referencing <u>Celotex Corp.</u>, 477 U.S. at 322-23; other citations omitted) (<u>Weber</u>, *abrogated on other grounds by* <u>Torgerson</u>, 643 F.3d 1031).

Even if Ms. Fula established a prima facie case of age discrimination, her claim must fail because she offered no evidence indicating Safeway's reasons for terminating her were pretextual.  <u>King</u>, 553 F.3d at 1162. Safeway says it terminated Ms. Fula for violating the Store Rules, particularly, using coupons not generated by her own purchases and using someone else's club card.  (Docket 31 at ¶ 20).  In 2010, Safeway terminated four other employees for the same conduct—using coupons awarded to others.  <u>Id.</u> at ¶ 24.  Against this factual background, Ms. Fula offers no evidence, beyond her own speculation and conjecture, to suggest that Safeway's reasons for terminating her were pretextual.  "[T]he showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee. A plaintiff must also demonstrate that the circumstances permit a reasonable inference of discriminatory animus."  <u>Haigh v. Gelita USA, Inc.</u>, 632 F.3d 464, 470 (8th Cir. 2011) (quoting <u>Roeben v. BG Excelsior Ltd.</u>

Partnership, 545 F.3d 639, 643 (8th Cir. 2008) (internal quotation marks and citation omitted).

Defendant is entitled to summary judgment on Ms. Fula's age discrimination claim.

## B.   GENDER DISCRIMINATION CLAIM

"Title VII of the Civil Rights of 1964, 42 U.S.C. §§ 2000e-2000e-17, prohibits discrimination in employment on the basis of sex." Wierman v. Casey's General  Stores, 638 F.3d 984, 993 (8th Cir. 2011).  Where a claimant does not show direct evidence of discrimination, "she can preclude summary judgment only by creating an inference of discrimination under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 . . . (1973)." Id.  "Under McDonnell Douglas, [claimant] must first establish a prima facie case of discrimination: 1) she is a member of a protected group; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) she was discharged under circumstances giving rise to an inference of discrimination." Id.  If Ms. Fula "establishes a prima facie case, the burden of production shifts to [Safeway] to articulate a non-discriminatory, legitimate justification for its conduct, which rebuts the employee's prima facie case. . . . If [Safeway] meets this burden, [Ms. Fula] must then produce evidence sufficient to create a genuine issue of material fact showing that [Safeway's] explanation is merely

13

a pretext for unlawful discrimination. . . ." Id. (internal quotation marks and citations omitted).  "[T]he issue is whether the plaintiff has sufficient evidence that unlawful discrimination was a motivating factor in the defendant's adverse employment action." Id.  For purposes of this summary judgment motion only, Safeway concedes Ms. Fula satisfies the first three elements of a prima facie case.  (Docket 30 at p. 3).

Safeway presented a legitimate reason for terminating Ms. Fula. (Docket 31 at ¶ 20).  As with her age discrimination claim, Ms. Fula offers no evidence, beyond her own speculation and conjecture, to suggest that Safeway's reasons for terminating her were pretextual.  Ms. Fula argues because of her ten-year record of positive evaluations, Safeway should have given her "the benefit of the doubt."  (Docket 35 at p. 29).  Notwithstanding her admitted violation of the Store Rules, Ms. Fula claims allowing two male employees from outside Store #1554 to investigate and then terminate her is "a decision-making process designed by the corporation to take face-to-face interaction, empathy and the human element out of its investigations and personnel decisions . . . ." Id.

Ms. Fula's argument misses the mark.  "Employers are free to make employment decisions based upon mistaken evaluations, personal conflicts between employees, or even unsound business practices.  Federal courts do not sit as 'super personnel departments reviewing the wisdom or fairness of

14

the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.' " Edmund v. MidAmerican Energy Co., 299 F.3d 679, 685-86 (8th Cir. 2002) (quoting Cronquist v. City of Minneapolis, 237 F.3d 920, 928 (8th Cir. 2001) (internal citations omitted)).  Other than suggesting a male employee within Safeway made the termination decision, Ms. Fula cannot establish a reasonable basis for inferring that the decision was pretextual and based on her gender. Wierman, 638 F.3d at 993.

Defendant is entitled to summary judgment on Ms. Fula's gender discrimination claim.

## C.    DISPARATE IMPACT CLAIM

Defendant asserts Ms. Fula failed to include a disparate impact claim in her EEOC charge of discrimination.  (Docket 30 at p. 9).  Because of Ms. Fula's failure to make a disparate impact claim, defendant argues she failed to exhaust her administrative remedies and the claim is now barred.  Id. Ms. Fula did not respond to defendant's argument.  See Docket 35 at pp. 32-33.

Defendant's undisputed material facts state Ms. Fula filed a charge of discrimination with the EEOC on January 6, 2011, alleging age and gender discrimination.  (Docket 31 at ¶ 26).  Ms. Fula did not dispute this statement.  (Docket 36 at ¶ 26).  Additionally, defendant's statement of

undisputed material facts says "Fula's charge [with the EEOC] made no

mention of 'harassment,' 'harassing comments,' or a 'hostile work

environment,' nor did it contain any reference to 'disparate impact' claims."

(Docket 31 at ¶ 27).  Ms. Fula responded:

> [Paragraph 27 is] [p]artially disputed because it does not reflect
> the totality of the facts and circumstances.  She states in her
> charge that the manager had followed her while she was shopping.
> It was discovered during the deposition of store manager, Tom
> Ryland, that he, in fact, followed her himself while she was
> shopping as a regular customer at Safeway.  He found that she
> had behaved within normal capacity and had done nothing
> improper.  Mr. Ryland also had other employees . . . following and
> watching her while she was at Safeway.  Therefore, although the
> word "harassed" wasn't actually stated, it would appear that
> harassing behavior, on part of the store manager, did take place,
> but these acts were part of the age and gender discrimination, not
> a separate charge of harassment. . . .  "Disparate impact" is a legal
> analysis of age and gender discrimination charges, which were
> alleged in the charge of discrimination filed with the EEOC.

(Docket 36 at ¶ 27).

"A plaintiff seeking to prove discrimination under the disparate impact

theory must show that a facially neutral employment practice has a

significant adverse impact on members of a protected minority group."

Chambers v. Omaha Girls Club, Inc., 834 F.2d 697, 700 (8th Cir. 1987).

"In Title VII, Congress set up an elaborate administrative procedure,

implemented through the EEOC, that is designed to assist in the

investigation of claims of . . . discrimination in the workplace and to work

towards the resolution of these claims through conciliation rather than

16

litigation." Duncan v. Delta Consolidated Industries, Inc., 371 F.3d 1020, 1024 (8th Cir. 2004), *abrogated on other grounds by* Torgerson, 643 F.3d 1031 (quoting Patterson v. McLean Credit Union, 491 U.S. 164, 180-81 (1989) (citing 42 U.S.C. § 2000e-5(b)).  "Title VII requires claimants to timely file a discrimination charge with the EEOC before . . . she may bring a Title VII action in court." Id. (referencing 42 U.S.C. § 2000e-5(e)(1)).  "It is generally recognized that exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." Id. (internal quotation marks, citations and brackets omitted).

The court does "not require that subsequently-filed lawsuits mirror the administrative charges." Id. at 1025.  "However, the sweep of any subsequent judicial complaint may be [only] as broad as the scope of the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination." Id. (internal quotation marks omitted).  "Allegations outside the scope of the EEOC charge . . . circumscribe the EEOC's investigatory and conciliatory role, and for that reason are not allowed." Id. (internal quotation marks omitted).

Based on the undisputed facts, Ms. Fula did not assert a disparate impact claim with the EEOC.  Having failed to exhaust her administrative

remedies on the disparate impact claim, that claim is barred.  <u>Kells v. Sinclair Buick-GMC Truck, Inc.</u>, 210 F.3d 827, 837 (8th Cir. 2000), *abrogated on other grounds by* <u>Torgerson</u>, 643 F.3d 1031 (summary judgment is appropriate where the claimant "failed to exhaust [her] administrative remedies with regard to [her] harassment claims.").

The disparate impact claim fails even if the court finds Ms. Fula's claim was impliedly incorporated into her age and gender discrimination charge with the EEOC.  Having failed on both her age and gender discrimination claims, there is nothing left upon which a disparate impact claim could be based.  Ms. Fula was terminated for her admitted violations of the Safeway Store Rules.  Ms. Fula "fail[s] to identify any particular policy or practice employed by [Safeway] that produces a disparate impact."  <u>Oti Kaga, Inc. v. South Dakota Housing Development Authority</u>, 188 F. Supp. 2d 1148, 1164 (D.S.D. 2002), *aff'd*, 342 F.3d 871 (8th Cir. 2003).  It is Safeway's business prerogative to fire any employee for theft so long as the termination is not a pretext to hide discrimination in violation of Title VII.

Defendant is entitled to summary judgment on Ms. Fula's disparate impact claim.

**D.     SOUTH DAKOTA ANTI-DISCRIMINATION CLAIMS**

Ms. Fula's action includes an anti-discrimination claim under South

Dakota law.  (Docket 5 at ¶ 25).  State law provides:

> It is an unfair or discriminatory practice for any person, because
> of race, color, creed, religion, sex, ancestry, disability, or national
> origin, to fail or refuse to hire, to discharge an employee, or to
> accord adverse or unequal treatment to any person or employee
> with respect to application, hiring, training, apprenticeship,
> tenure, promotion, upgrading, compensation, layoff, or any term
> or condition of employment.

SDCL § 20-13-10.  The South Dakota Supreme Court determined "SDCL

20-13-10 is comparable to the corresponding provision in Title VII of the

Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., . . . ."  Huck v. McCain

Foods, 479 N.W.2d 167, 169 (S.D. 1991).  See also Mutua v. Texas

Roadhouse Management Corp., 753 F. Supp. 2d 954, 958 (D.S.D. 2010)

("discrimination claims under Title VII and SDCL 20-13-10 are analyzed

under the same framework.") (referencing Ross v. Kansas City Power & Light

Co., 293 F.3d 1041, 1050 n. 1 (8th Cir. 2002) (federal and state

discrimination laws should be analyzed under the same framework); Huck,

479 N.W.2d at 169).

The court concluded Ms. Fula's age and gender discrimination claims

fail under Title VII.  Because South Dakota requires a plaintiff to satisfy the

elements of a Title VII claim to prevail under § 20-13-10, the court finds Ms.

Fula's state claim also must fail.

19

Defendant is entitled to summary judgment on Ms. Fula's South Dakota anti-discrimination claim.

### ORDER

Based on the above analysis, it is hereby

ORDERED that defendant's motion for summary judgment (Docket 29) is granted.

IT IS FURTHER ORDERED that plaintiff's amended complaint (Docket 5) is dismissed with prejudice.

Dated September 30, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE

20